This is a suit for damages for personal injuries, and to his automobile, instituted by the plaintiff, Lawrence Lee Jones, against the defendant, Yazoo Mississippi Valley Railroad Company, predicated on an accident which occurred during the night of February 4, 1939, on the Plank Road leading north from the City of Baton Rouge at a point where it is intersected by the tracks of the said Railroad Company over its right of way. The right front wheel of plaintiff's car which he was driving north dropped into a hole or rut adjacent to the paved portion of the road on the east side, causing him to lose control over it and as a result it ran off the road and turned over in a ditch some twenty or twenty-five feet north of the Railroad tracks.
In his petition, plaintiff avers that this hole which he describes as being ten to twelve inches wide, about six feet long and a foot deep, "was definitely upon the right of way of the Railway Company, beginning at the north rail of the track and extending north a distance of six feet immediately adjacent to the pavement on the east."
In setting out how the accident happened without fault or negligence on his part, plaintiff alleges that as he crossed the railroad tracks, an automobile coming from the east on a gravelled road which connects with the Plank Road just north of the Railroad crossing turned south on the Plank Road and this made it necessary for him to pull his car over to the right shoulder before he crossed the north rail of the railroad track, and as he did so the right front wheel of his car dropped suddenly in the said hole or rut with the result already stated.
As negligence on the part of the defendant he charges it with failure in its obligation to maintain that part of the Plank Road traversed by it, at least within the limits of its crossties, in a reasonably safe condition for vehicular and other proper traffic upon the highway, by allowing the hole described by him to remain unattended to, within its right of way limits; on information and belief he alleges further that to the actual knowledge of the defendant the said hole had existed for more than a month prior to the accident. In the alternative he sets out that if the defendant did not have actual knowledge of the existence of the hole, that it had been there for a sufficient length of time for it to have become known to its officers, agents and employees under any reasonable *Page 187 
and proper system of inspection, and for that reason alone, knowledge of the condition which existed is imputed to the defendant.
Plaintiff alleges further, on information and belief, that under its agreement with the Louisiana Highway Commission, the defendant was obligated to maintain all highways traversed by it at its own expense and that this obligation existed with regard to its crossing over the Plank Road. In the further alternative he pleads that regardless of any such agreement it is obligated under the law to maintain the road within the limits of its right of way in a reasonably safe condition for vehicular and other traffic and that the hole which existed at its crossing over the Plank Road was dangerous and of such nature as to subject vehicular traffic, of necessity, to the very character of an accident such as happened to him.
Plaintiff next sets out the nature, extent and resulting consequences of the injuries sustained by him for which he claims to be entitled to damages in the sum of $8,825, and in addition he avers that his automobile was damaged to the extent of $305, which amount he is also entitled to recover subject to the right of subrogation of the insurance company which has paid him to the limit of its liability under a policy of insurance which he carried. Judgment is prayed for against the defendant accordingly.
In its answer to the plaintiff's petition, the defendant admits its ownership of and control over the railroad crossing over the Plank Road at the point where the alleged accident happened, and also that it has certain duties and obligations to maintain the crossings over public roads traversed by its tracks. It avers however that all such duties and obligations with regard to the crossing in question were fully and legally discharged and that the same was in a safe condition for automobile and other vehicular traffic. Otherwise, it denies all the allegations of the petition, and for further answer avers that the Plank Road, south of its crossing, is paved with a hard surface twenty-six feet in width and that the portion which is traversed by its crossing is covered with a standard sheet-iron crossing of the same width, levelled with the paved surface and presenting a continuous and smooth passage over the road. That north of its track, the concrete surface of the road is narrowed to eighteen feet with a shoulder four feet wide, level and continuous with the wider paved surface south of the track and also with the sheet-iron covering over its crossing, and that the road, north and south of the tracks and the said sheet-iron covering, were and are all on one level and were all in first class condition at the time of the accident complained of, all of which could easily be seen by any automobile driver using the said highway and was well known to the plaintiff who travelled over the same frequently and regularly.
Defendant then alleges that the accident which plaintiff complains of was caused solely and wholly by his own negligence and that had he been driving his automobile at a reasonable rate of speed and kept it on the highway provided for him, in the manner in which any driver should have operated a car, nothing would have occurred. Further, it charges that plaintiff was fully familiar with the road and the crossing at that point and if there were any defects or holes in the shoulder of the road, he should have been aware of the same and that his disregard of the situation if any such existed, was the sole cause of the accident and resulting injuries he complains of. In the alternative defendant pleads contributory negligence on the part of plaintiff which estops him from any recovery.
The case was tried in the district court on the issues as thus presented and from a judgment in favor of the defendant, dismissing plaintiff's suit at his costs, this appeal was taken and perfected.
There seems to be no dispute concerning the manner of construction of the Railroad crossing itself over and across the Plank Road at the point where this accident happened. The crossties which are eight feet long run north and south and the rails which run east and west are fastened to them. Planks or boards approximately four inches thick are also laid on the crossties and to these there is fastened or bolted a steel or metal plate about a quarter of an inch thick, making the top surface of the crossing, including the tracks flush with the top surface of the paved road on either side. The width of the crossing corresponds with the width of the concrete slab of the highway on the south which is twenty-six feet. North of the crossing the paved slab of the road is eighteen feet wide but there are four feet *Page 188 
gravelled shoulders on each side making the total width of the highway the same as that of the crossing, that is twenty-six feet.
A matter which is in dispute is the exact location of the hole or rut in which the right front wheel of plaintiff's car fell. There is also some discrepancy in the testimony regarding the size of the hole but it seems to have been of sufficient size and depth to have caused the car to get out of the driver's control when the wheel struck it. It is definitely shown to have been beyond the point of the actual construction of the crossing and plaintiff himself, when asked to indicate its location on a photograph of the locus, marked a spot which apparently would be several inches, if indeed not even a foot or more, north of the metal covering which extends north of the north rail of the track. It is undisputed, however, that it was immediately adjacent to the concrete slab of the highway on the east shoulder.
Plaintiff seems to contend that even though this hole was beyond the actual construction of the crossing itself that it was nevertheless within the limits of the defendant's right of way, and that being so, it was charged with the duty of correcting the defect occasioned by its appearance at that spot on the highway. Reference in this connection is made to Act No. 132 of 1918, but, as stated by this Court in the case of Brandon v. Texas New Orleans Railroad Co., 169 So. 254, that act merely affords a remedy by which a railroad company can be compelled to perform its duty in keeping its crossings over public highways in good order. The Railroad's duty in that respect is statutory and is imposed by Act No. 157 of 1910. By the terms of that act, Railroads are required to keep their crossings over public highways in such condition as not to hinder, impede or obstruct the safe and convenient use of such highways. It is a continuing duty and has to be discharged whenever the condition of the crossing is in need of repair in order for it to be safe and convenient to the travelling public. Darby v. New Orleans, T. 
M. Railroad Co., 139 La. 213, 71 So. 490. All the testimony is to the effect that the crossing involved in this case is as smooth and as level with the adjoining road on each side as can be expected and desired. C.A. Ives, Civil Engineer, offered as an expert witness by the plaintiff finds as the only fault, apparently, that because of the sudden narrowing of the concrete slab of the highway, the driver of a car going north may be forced, upon leaving the metal plate covering over the crossing, to cut across a part of the gravel shoulder on the northeast end of the crossing in order to reach and accommodate himself to the narrower width of the pavement. He seems to be of the opinion that a type of surfacing, more rigid than gravel, should have been used in construction at this point of the metal plate and that it should have been gently tapered off toward the north, gradually accommodating itself to the narrower width of the paved slab. But at the point this witness has reference to, that is not a part of the construction of the crossing. It is part of the construction of the highway with which the railroad company had nothing to do in its construction and evidently has nothing to do with its maintenance. According to the testimony of Mr. Ives himself and that of the other witnesses, the crossing was constructed by the railroad company in accordance with the plans and specifications of the Louisiana Highway Commission, and under its supervision. It evidently is maintained in proper condition as several witnesses refer to it as being a first class crossing. On the other hand, the shoulders adjoining the paved portion of the highway, including the very point at which the hole plaintiff complains of existed, have always been maintained and repaired by the Highway Commission.
We learn from Mr. Ives' testimony that an average of five thousand vehicles pass over the crossing daily. Figured by the year that means that more than 1,800,000 automobiles and other automotive vehicles go over it each year and yet, as far as this record discloses, over a period of years, not more than three are known to have met with an accident, not on the crossing itself, but like the plaintiff's car, because a wheel dropped in such a hole or rut on the shoulder of the highway as did his. This certainly affords proof, in our opinion, that the crossing is a safe one and that the convenient use of the public highway is in no manner hindered, impeded or obstructed.
Plaintiff testifies that he passed there several times daily, both during the day and at night. He therefore was familiar with the crossing and the manner in which it adjoined the highway on either *Page 189 
side. Assuming, as he says, that there was a car coming from the east on the road which intersects the Plank Road north of the crossing, and that it was turning south on the Plank Road, that of itself certainly created no such emergency which should have caused him to pull on the shoulder of the highway as he did and lose control of his car. The impression we are left with, after reading his testimony, is that plaintiff was not keeping a proper lookout ahead of him and that he heedlessly ran his car on the shoulder of the highway, at which time its front wheel struck a rut adjacent to the concrete slab causing him to lose control over it. That, in our opinion, was the cause of the accident and the condition of the railroad crossing had nothing to do with it.
The judgment of the lower court which rejected the plaintiff's demand and dismissed his suit is correct and it is therefore affirmed at his costs.